## Case No. 5,930.

### HALL v. EASTWICK et al.

[1 Lowell, 456.] [1]

District Court, D. Massachusetts. July, 1870.

#### DEMURRAGE.

Under a bill of lading stipulating for demurrage after a certain time from the arrival of the vessel and notice thereof, none will be payable for any days that the vessel was detained through the fault or negligence of her master or officers.

Demurrage. In this bill of lading there was a special clause concerning demurrage, lately adopted by the owners of colliers, as follows: "And twenty-four hours after the arrival at the above-named port, and notice thereof to the consignee named, there shall be allowed for receiving said cargo at the rate of one day, Sundays excepted, for every hundred tons thereof, after which the cargo, consignee or assignee shall pay demurrage at the rate of eight cents per ton upon the full

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

amount of the cargo as per this bill of lading for each and every day's detention beyond the days above specified until the cargo is fully discharged, which demurrage shall be a lien upon said cargo." The vessel brought 288 tons of coal consigned to the respondents, and the arrival was notified to them on Monday, September 6th, at 9 o'clock, a. m.; on Tuesday the master [Gershom Hall] left the vessel in charge of the mate; on Wednesday, the eighth, at 8 o'clock, a. m., the consignees notified the mate to go to the wharf of the Boston and Albany Railroad Company to discharge the cargo, but, for some unexplained reason, he failed to do so. On Friday, the tenth, the master returned to Boston, and in the afternoon of that day took the schooner to the designated wharf and found the berths occupied, which detained him for some days longer, though precisely how long he was in getting a berth and how long in discharging he could not remember. He was fully discharged on the afternoon of Thursday, the sixteenth of September. He demanded demurrage for six days and a half, besides his freight. The answer admitted that freight was due, and averred that the respondents [C. J. Eastwick and others] had been always ready to pay it, and that the delay was wholly caused by the libellant's fault.

P. H. Hutchinson, for libellant.
D. Thaxter, for respondent.

LOWELL, District Judge. The contract gives four days from notice of arrival for discharging the cargo, and ten had elapsed before the delivery was complete. The libellant contends that this fact establishes his right to recover six days' demurrage unless bad faith on his part is proved, because the contract in this respect, as he contends, merely establishes a mode of computing freight or compensation in the nature of freight for the use of his vessel during the period of detention, whatever may have been the cause of the delay. His voyage was completed, he says, at the expiration of twenty-four hours after notice of his arrival in the port, and the lay-days ended three days thereafter. It seems to me to be the fair construction of this contract as applied to the coal trade of this port, that the twenty-four hours is intended for the reasonable time in which the consignee is to notify the master where to go to discharge and for the master to get to that place, and that if the vessel fails without good excuse to obey the order to go to the wharf, the lay-days will not begin to run until her arrival at the wharf. The notice of arrival implies a readiness to deliver the cargo, and if the vessel is not in a situation to do this, the days of her unreadiness cannot be counted in her favor. On this ground three days must be added to the four which the bill of lading allows for discharging.

The respondent goes further, and contends

that I must assume, in the absence of evidence to the contrary, that if the vessel had been moved on the first order, the berths would have been free, and no delay at all would have occurred. I think it is dangerous to undertake to conjecture what might have happened in a state of circumstances different from what actually occurred. The bill of lading evidently intends to throw a loss of time which may arise from a want of berths on the consignee, and not on the vessel, and there was such a loss here. The vessel was at the prescribed wharf and ready to unload on Friday afternoon, and her cargo was all out on the following Thursday. It is impossible to say whether this delay would have occurred if the libellant had moved his schooner on Wednesday, and equally impossible to say what would have happened if the wharf had been designated within twenty-four hours after arrival as the bill of lading contemplates. The true rule appears to be to compute the days for unloading, without including those during which the schooner was lying useless by the fault of her own people; or, which in this case amounts to the same thing, to begin to count the lay-days from the arrival of the schooner at the wharf. This computation gives two days' demurrage besides the freight.

Decree for freight, $648; demurrage, $46.08; interest at six per cent from 16th September, 1869, $34.36; total, $728.44; and costs.